The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones, and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioners Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and of the subject matter.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. ITT Hartford is the carrier on the risk.
4. Plaintiffs injury, which is the subject of this cause of action, is carpal tunnel syndrome.
5. Plaintiffs average weekly wage at the time of injury was $484.54, which yields a compensation rate of $323.03 per week.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is a high school graduate who began her employment with defendant Staffmasters USA, a temporary agency, in 1995.
2. Plaintiff was assigned to work for Freightliner in July 1996. Plaintiff initially worked as a spot welder for approximately three weeks and then was moved to door assembly. Plaintiff installed door seals on truck doors, which involved clamping the seal onto the doorframe, drilling holes and then attaching the seal using air tools to drill and rivet the seals into place. Plaintiff assembled between 40 and 50 units per shift.
3. Approximately one month after working door assembly, plaintiff began to experience pain in her hands. She would wake at night with her hands tingling. A co-employee told plaintiff to get some anti-shock gloves from the plant nurse, but this did not relieve plaintiffs symptoms. Plaintiff had also been given some wristbands and had been told by the defendant to wear them to support the bottom part of the hand. Plaintiff wore these bands, but said that they did not relieve her symptoms.
4. Plaintiff reported the problems to Joe Barrett, her group leader, on November 4, 1996 and she was sent to First Health where she was diagnosed with carpal tunnel syndrome and referred to Dr. Humble at Oweda Orthopaedic Clinic.
5. On November 6, 1996, Robert S. Humble, M.D., saw plaintiff to treat pain predominately in her right hand and some pain in her left hand. Plaintiffs claim for right and left wrist and hand carpal tunnel syndrome was accepted by defendants pursuant to a Form 60 and defendants paid temporary total disability from November 13, 1996 through July 16, 1997 at which time the payments were terminated pursuant to a Form 28T. The Full Commission finds that the Form 28T should not have been filed by defendants because plaintiff had not returned to work anywhere at the same or equal wages.
6. Dr. Humble gave her cortisone injections, which did not help plaintiff, and saw her again in two weeks. Following a nerve conduction study and therapy, plaintiff had carpal tunnel release performed on her left hand in March 1997 by Dr. Humble. However, plaintiff continued to experience numbness and tingling in her left hand following surgery. Plaintiff also continued to have pain in her right hand for which there had been no surgery. Plaintiff was then released to go back to work.
7. Plaintiff called defendant and asked to be sent back to Freightliner, but was told that no positions were available. Plaintiff worked in various jobs assigned by defendant, but never at the same or greater wages, and continued to seek assignment back at Freightliner where she had received 40 plus hours a week and better pay. Plaintiff did get reassigned to Freightliner, but was unable to do the job due to the heavy lifting required. Plaintiff notified defendant of her inability to do the job and was told to go home. Defendant told her that that job was going to terminate the next day anyway. The Full Commission finds plaintiff to be more credible than Summer Robertson, who worked for defendant and dealt with plaintiff in job placement as well as handling the Freightliner account. Ms. Robertson was unsure of the number of times plaintiff called in seeking work and was told there was no work available; then stated that there were no Freightliner jobs available when plaintiff called to inquire; and when asked about the number of jobs that were available through her Freightliner account, she responded, "I have no idea.
8. Plaintiff found employment on her own for approximately four months with Community Living Concepts and continued to try and get work through defendant after that. Defendants witness, Summer Robertson, testified that defendants require employees to call in daily for new assignments. Ms. Robertson also testified that defendants do not keep records of the times that employees call in and are not offered work. Plaintiff was offered some work through defendant, but she refused some due to it being on third shift or because it was not full time work. At the time of the hearing before the deputy commissioner, plaintiff was working a job she found on her own at CVS Pharmacy in Gastonia, North Carolina as a pharmacy technician.
9. Plaintiff saw Dr. Ronald Demas, a neurologist, for a second opinion. Dr. Demas did a physical examination of plaintiff, took her history and reviewed her records. Dr. Demas found a positive Tinels sign and Phalens sign in the left hand consistent with the complaints of plaintiff. Dr. Demas recommended that plaintiff not return to repetitive motion work. Dr. Demas also testified, and the Full Commission finds as fact, that the plaintiffs job of drilling and installing rivets placed her at a higher risk of developing carpal tunnel syndrome than the public in general. The Full Commission finds as fact that drilling and riveting is characteristic of the occupation in which plaintiff was employed and exposed plaintiff to a disease that the public in general is not equally exposed. Dr. Demas gave plaintiff a 5% impairment rating to the left hand. However, there are no medical records or testimony in the record that indicate that plaintiff has reached maximum medical improvement.
10. Plaintiff has been unable to find any employment higher than $8.65 per hour since she worked at Freightliner for defendants. Aside from any restrictions placed on plaintiff by her doctors, the only request plaintiff had made of defendant was not to be placed on third shift due to plaintiffs being unable to physically adjust to the different sleeping patterns required for working during the night. Plaintiff was offered jobs that paid substantially less and/or were only part-time jobs. Plaintiff has been unable to earn the same or greater wages in any employment due to restrictions of no repetitive motion work, continuing problems with her hands, and plaintiffs lack of education, vocational training and experience.
11. Since Dr. Humbles records were never properly received into evidence, the record is devoid of any records as to plaintiffs functional capacity. Defendants declined to depose Dr. Humble following the initial hearing before the deputy commissioner as well as after the hearing before the Full Commission in which the record was held open for that purpose. Therefore, there are no medical records to refute Dr. Demas, who the Full Commission finds to be credible.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted an occupational disease, carpal tunnel syndrome, as the result of and arising out of her employment with defendant-employer. Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359
91983). N.C. Gen. Stat. 97-53(13). She was at an increased risk of contracting this occupational disease because of such employment.
2. Because of her compensable occupational disease, plaintiff has been unable to earn the same or greater wages in any employment due to restrictions of no repetitive motion work, continuing problems with her hands, and plaintiffs lack of education, vocational training and experience. Russell v. Lowes Product Distribution, 108 N.C. App. 762,425 S.E.2d 454 (1993).
3. Plaintiff has not unjustifiably refused suitable work and is entitled to temporary partial disability payments for the difference between her average weekly wages before the injury and the average weekly wages she is able to earn thereafter. N.C. Gen. Stat. 97-30.
4. Plaintiff received temporary total disability compensation from November 13, 1996 through July 16, 1997 and defendants are entitled to a credit against any wages earned by plaintiff during this period. N.C. Gen. Stat. 97-29.
5. Plaintiff is entitled to medical compensation as may reasonably be required to effect a cure or give relief or will tend to lessen the period of disability. N.C. Gen. Stat. 97-2(19) and N.C. Gen. Stat. 21 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorneys fee herein approved, defendants shall continue to pay temporary partial disability compensation to the plaintiff until such time as she returns to work at the same or greater wages, up to a maximum of 300 weeks from November 6, 1996. Any arrearage shall be paid in a lump sum subject to the attorneys fee set forth below.
2. Defendants shall provide appropriate medical treatment for plaintiffs occupational disease and shall pay for such treatment, past, present and future.
3. Defendants are entitled to a credit against any wages earned by plaintiff during the period in which she was receiving temporary total disability compensation.
4. A reasonable attorneys fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiffs counsel. One fourth of any lump sum due plaintiff shall be paid directly to plaintiffs attorney, as well as every fourth check thereafter. Defendants shall pay interest at 8% per year from the date of the hearing before the Deputy Commissioner on all compensation due. All of the interest shall be paid to plaintiff.
5. Defendants shall pay the costs of this action.
This 14th day of May 2001.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING WITHOUT WRITTEN OPINION:
 S/_______________ DIANNE C. SELLERS COMMISSIONER